Filed 5/22/14  P. v. Ring CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>JOSEPHINE M. RING,<br><br>     Defendant and Appellant. | D062782<br><br><br>(Super. Ct. No. SCE307616) |

APPEAL from a judgment of the Superior Court of San Diego County, William J. McGrath, Judge.  Affirmed.

Carl Fabian, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Tami Falkenstein Hennick, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Josephine M. Ring guilty of second degree murder in the killing of her adult son, Vincent Bonfiglio. (Pen. Code, § 187, subd. (a).)[1] The trial court sentenced Ring to serve a term of 40 years to life in prison.

Ring contends that the evidence was insufficient to support the jury's murder verdict because the record does not contain substantial evidence to support a finding of express or implied malice. We conclude that Ring's argument is without merit, and accordingly we affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

Ring and her 48-year-old son Bonfiglio shared a home in El Cajon. On the evening of December 19, 2010, Ring, who was extremely intoxicated, was arguing with Bonfiglio. During the argument, Ring was holding a gun and threatening to kill Bonfiglio. Bonfiglio took the gun away from Ring at some point and said he was going to unload it, but then apparently gave the gun back to Ring still loaded. Bonfiglio captured some of the argument on his cell phone camera in three 30-second videos, which are time-stamped as beginning at 10:56 p.m., 10:58 p.m. and 10:59 p.m. The audio of the videos reflects the following conversation:

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

2

"[Ring]:  . . . come over there and fucking kill ya.

"[Bonfiglio]:  What are you doing Ma?  What are you doing?

"[Ring]:  I can come over here and fucking kill ya.

"[Bonfiglio]:  Put the gun away.  Put the gun away Ma.  Put the gun away.

"[Ring]:  Nah, you told me to do it.

"[Bonfiglio]:  Put the gun away.

"[Ring]:  Yeah put me on record.

"[Bonfiglio]:  Mom put the gun away.  Put the fucking gun away!

"[Ring]:  Don't you dare.

"[Bonfiglio]:  Put the gun away.

"[Ring]:  (Unintelligible.)

"[Bonfiglio]:  Put the gun away!  Put the gun away!

"[Ring]:  I'm gonna shoot you.

"[Bonfiglio]:  Give me the fucking gun.

"[Ring]:  Get out!

"[Bonfiglio]:  Here.  Here you wanna shoo . . . .  What are you doing?
Here.  What are you doing?  Let go . . . .  Ma, what are you doing?"

(END OF FIRST VIDEO.)

"[Bonfiglio]:  Would you stop?

"[Ring]:  Give it to me or I'll knife ya.

"[Bonfiglio]:  Ma[,] now you're gonna knife me?

3

"[Ring]:  Yeah.

"[Bonfiglio]:  You're gonna knife me?

"[Ring]:  Give me.

"[Bonfiglio]:  You just pulled a gun on me . . . .

"[Ring]:  Give me the gun!

"[Bonfiglio]:  Why?

"[Ring]:  Because it's done.

"[Bonfiglio]:  Well then let me unload it.  Ma, I'm not.  You just pulled a gun on me and said you're gonna kill me.  All right?  I'm not giving you the gun.  If you need help that bad . . . .  Go on smack me as much as you want.  Smack me as much as you want, Ma.

"[Ring]:  You keep telling me (unintelligible)."

(END OF SECOND VIDEO.)

"[Ring]:  Aw, get it on me.  (Unintelligible.)

"[Bonfiglio]:  . . . Ma, what are you doing?

"[Ring]:  You cock sucking son of a bitch.

"[Bonfiglio]:  Ma, please stop.  Please.  I'm not giving you the gun.  You're not killing anybody.  Please stop.  Please, we're family.  I love you.

"[Ring]:  Give me . . . .

"[Bonfiglio]:  . . . What?

"[Ring]:  . . . the gun.

"[Bonfiglio]:  Why?  Why?

"[Ring]:  Because I need it for protection from you.

4

"[Bonfiglio]:  You don't need from me.  Ma, . . . I'll give it to you.  Back the fuck away."[2]

(END OF THIRD VIDEO.)

At 11:05 p.m., police and paramedics responded to the scene after receiving a 911 call from Ring, who was screaming and hysterical.  Bonfiglio was lying on the floor in the hallway with a single bullet wound in his upper chest, and was pronounced dead at the scene by paramedics.  Police found a single bullet hole in the middle of the door leading to the hallway where Bonfiglio was lying.  A gun was found in Ring's closet, which was likely the gun that fired the bullet at Bonfiglio and which appeared to be the same gun that Ring was pointing at Bonfiglio in the videos.

Ring was charged with murder, along with firearm enhancements.  (§§ 187, subd. (a), 12022.53, subd. (d), 12022.5, subd. (a).)

At trial, the prosecution's firearms expert, Roland Chang, testified that the bullet hole through the hallway door was not perfectly circular.  The irregular shape could have been caused by destabilization of the bullet or possibly by the door being in the process of closing when it was hit by the bullet.  Chang performed tests that ruled out a defect in the gun as the cause of the possible bullet destabilization.  He accordingly concluded that if the bullet was destabilized, the destabilization must have been caused either by some kind of intervening object hitting the bullet before it reached the door, or possibly by the

---

[2]    We have set forth the audio content of the three videos as reflected in the transcription provided to the jury.

5

bullet striking the door. One hypothetical scenario discussed during Chang's testimony is that Ring was holding a knife in the path of the bullet, which made it destabilize.

Chang testified that he considered whether the bullet could have ricocheted off something to cause the destabilization. Chang explained that ricochet marks are usually "obvious," and he did not find any obvious marks at the house. In addition, Chang believed the bullet did not ricochet because the trajectory of the bullet was straight and perpendicular to the floor, but a ricocheting bullet would have traveled through the hallway door at an angle.

The jury found Ring not guilty of first degree murder, but guilty of second degree murder. The jury further made a true finding on the firearm enhancements. Ring was sentenced to serve a term of 40 years to life in prison.

II

DISCUSSION

Ring's sole appellate contention is that the verdict is not supported by substantial evidence because there was insufficient evidence of malice. Focusing on Chang's testimony about the irregularly shaped bullet hole, Ring argues that the bullet could have been destabilized by ricocheting, causing the irregular bullet hole. She argues that it is therefore possible that the gun was pointed *away* from the hallway when it was fired. According to Ring, "[w]ithout solid and credible evidence as to the direction the gun was pointed when it was fired, . . . it remains a matter of pure speculation and conjecture as to whether the shooter harbored express or implied malice." As we will explain, we reject

6

Ring's argument because it misapprehends the appellate standard of review in a challenge to the sufficiency of the evidence, and the record contains substantial evidence of malice.

Murder is defined as "the unlawful killing of a human being, or a fetus, with malice aforethought."  (§ 187, subd. (a).)  Malice may either be express or implied. (§ 188.)  Express malice exists "when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature."  (§ 188.)  "[M]alice is implied when the killing results from an intentional act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life." (*People v. Dellinger* (1989) 49 Cal.3d 1212, 1215.)

Ring does not dispute that shooting a gun through a closed door with someone on the other side could reasonably be found to constitute implied malice, as it is an act that is obviously dangerous to human life.  However, she disputes that the evidence is sufficient to establish that she aimed the gun at the hallway door.

An understanding of the proper standard of review is central to our evaluation of Ring's argument.  When reviewing a challenge to the sufficiency of the evidence, we "presume[] in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence," and we "examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence — evidence that is reasonable, credible and of solid value — such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."  (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.)  "Although it is the *jury's* duty to acquit a defendant if it finds the

7

circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence it is the *jury*, not the *appellate court* that must be convinced of the defendant's guilt beyond a reasonable doubt." (*Id.* at pp. 1053-1054, italics added.) " '[T]he rule that the circumstances relied upon by the prosecution must be consistent with guilt and *inconsistent* with an hypothesis of innocence, is a rule of instruction *for the jury*, and is not the rule for the guidance of *the court* on review.' " (*People v. Huizenga* (1950) 34 Cal.2d 669, 676, italics added.) " 'If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances might also reasonably be reconciled with the innocence of the defendant will *not* warrant interference with the determination of the jury.' " (*People v. Love* (1960) 53 Cal.2d 843, 850-851, italics added.) We apply the same substantial evidence standard of review in a case where the verdict was based on the jury's evaluation of *circumstantial* evidence as we do in a case involving *direct* evidence. (See *Kraft*, at pp. 1053-1054.)

Because our role on appeal is to determine whether substantial evidence supports the jury's verdict, we reject Ring's argument that we should reverse her conviction on the ground that the evidence *could* support an inference that the bullet ricocheted off of something rather than being shot straight through the door at Bonfiglio. Here, we need not look very far in the evidentiary record to find ample circumstantial evidence supporting a jury finding that Ring aimed the gun at the door toward Bonfiglio instead of pointing it somewhere else. The strongest circumstantial evidence that Ring intended to shoot toward the door are her statements, recorded on the videos shortly before the

8

shooting, that she is going to shoot and kill Bonfiglio. That evidence alone is sufficient to support a finding that Ring shot at the door toward Bonfiglio.

Ring contends that because of Chang's testimony about the irregularly shaped bullet hole in the door, the jury could not reasonably find that she aimed the gun toward the door. We disagree. As we have described, Chang testified that there were several possible explanations for the irregularly shaped bullet hole, among which were (1) the bullet destabilized when it hit the door; (2) an intervening object, possibly a knife or something else in front of the gun, destabilized the bullet; or (3) the door was in the process of closing when the bullet hit it. None of those possibilities is inconsistent with Ring aiming the gun at the door. Further, Chang's testimony about the possibility of a ricochet amply supported a finding that the bullet was shot straight through the door instead of ricocheting. Chang clearly testified that the physical evidence was *not consistent with a ricochet* because the bullet hole was not at an angle, and there were no ricochet marks in the house.

Based on the above, we conclude that Ring's challenge to the sufficiency of the evidence on the issue of malice is without merit. Ring threatened to shoot and kill Bonfiglio moments before he was shot, and the physical evidence is consistent with a gun being aimed directly at the hallway door.

9

DISPOSITION

The judgment is affirmed.

                                                              IRION, J.

WE CONCUR:

McDONALD, Acting P. J.

O'ROURKE, J.